OPINION
PER CURIAM:

FACTS

Mason Stanhope, Appellant, was terminated from his job as an Inspector II by the Tulalip Tribal Gaming Agency, Appel-lee. The Dismissal Notice charged that Stanhope fell asleep while on duty on five separate occasions in December, 2008. For the first two incidents he received a Documented Verbal Warning under TTO 84.X.A.4. For the remaining three he was given a Dismissal Notice under TTO 84.-X.C.5. The termination was for major violations and “multiple minor violations” of the Human Resources Ordinance, Title 84, specifically:
TTO 84.VLG.3i: conduct affecting adversely the confidence of the Tribal enrolled members in the integrity of the Tulalip Tribes (major).
TTO 84.IX.D.2J: conduct bringing the Tribes into disrepute (major).[1]
TTO 84.IX.D.l.b: Sleeping on duty—no danger to others (minor) (five offenses).
TTO 84.IX.D.l.p: violation of any employment rule, including the rules regulations and procedures of your department unit (TGA Code of Conduct) (minor).
Appellant does not dispute that he fell asleep while on duty, as stated in the Documented Verbal Warning and the Dismissal Notice, but complains that the process used by the Gaming Agency violated his due process rights under the relevant Tulalip law.
The Employment Court upheld Stan-hope’s dismissal. He filed a timely appeal.

DISCUSSION

The Tulalip Tribe governs the relationship between its employees and the Tribe through Ordinance 84. TTO 84.I.B. Title 84 contains a dedication by the Tribe to treat “... each individual with care, dignity, fairness, respect and recognition.” TTO 84.I.A (emphasis added). Each employee may rely on Title 84 in determining his/her employment status. TTO 84.1.B.
Discipline, Grievances anil Appeals within the employment relationship are covered by TTO 84.X. An aggrieved employee is entitled to a series of administrative procedures, including notice of the actions or inactions leading to the disci *354 pline and the consequences if the behavior does not change. If these procedures do not satisfy the employee, he or she may appeal to the Employment Court and later seek review of the Employment Court’s decision by this Court. In pursuing this appeal, the employee is entitled to, among other discovery, a copy of his/her personnel file. TTO 84.X.B.9. Relevant portions of Stanhope’s personnel file are part of the record here. Neither party seeks to supplement the record with additional portions of that file.
Treating the employee with fairness, coupled with the procedural safeguards surrounding an employee’s termination found in TTO 84.X, require that the employee receive notice of the actions or non-actions giving rise to the discipline or termination, and, for minor offenses, opportunity to change this behavior prior to termination.
1. The major violations
Appellant was dismissed for tw7o major violations under TTO 84:
TTO 84.VI.G.3: An employee shall not engage in any action, which may appear or result in ...
f. Affecting adversely the confidence of the Tribal enrolled members in the integrity of the Tulalip Tribes (ma).
TTO 84.IX D.2.t: conduct bringing the Tribes into disrepute (ma).
One major violation may be grounds for dismissal, TTO 84.IX.C.5 and TTO 84.-X.A.3.b.l, although both sections give supervisors permission to impose lesser sanctions. Two major violations compel dismissal. TTO 84.X.A.3.b.2.
TTO 84 VI.G. is captioned “Ethics, Code of Conduct.” In accordance with its caption, this section prohibits a variety of conduct that “may appear” to be unethical for a public employee. Sleeping on the job is not ordinarily an ethical offense, and it is not one here. This Ordinance section is therefore inapplicable.
The Gaming Agency, however, also disciplined Appellant for violation of TTO 84 IX.D.2.t. This section prohibits “Conduct bringing the Tribes into disrepute.” The Code does not set out what evidence is required to prove this major violation, but the Ordinance provision is clearly aimed at protecting the public image of the Tribes. Thus, there must be some evidence that the public, aware of the employees’ conduct, thought it showed the Tribes to be disreputable.
Neither the Dismissal Notice nor the portions of Stanhope’s personnel file hint as to how the Gaming Agency or other officials determined the violation of these code sections, although the Dismissal Notice was signed by the General Manager and the Human Resources Director. So far as the record shows, no evidence was presented to the Employment Court that the public was aware of Appellant’s behavior or, if aware, had any reaction to it. The Employment Court rejected Appellant’s proffer of an informal survey of Gaming Agency employees refuting the conclusion that his conduct brought the Tribes into disrepute. On appeal, the Gaming Agency noted that only one of the individuals surveyed was a tribal member. At oral argument, it also proposed that the determination of the General Manager and the Human Resources Director was sufficient proof of violation of these sections.
We do not decide here that the Gaming Agency could never prove violation of TTO IX.D.2.t, although the imprecise drafting of the section could lead to that conclusion. Nor do we hold that an informal survey is a sufficient, or even admissible, rebuttal of such an alleged violation. We do hold that under the circumstances of this case, the Gaming Agency acted unfairly: it has not *355 given Stanhope proper notice of the evidence supporting its allegations regarding this major violation, nor has it afforded him a meaningful opportunity to present a defense to its conclusion that this major violation was committed. The Employment Ordinance requires that a terminated employee must receive a notice “setting forth the reasons” for termination. TTO 84, IX.C.5. Merely stating that a provision of the Ordinance was violated is not a reason; the “reasons” are the facts that show such a violation. The notice need not spell out the facts in evidentiary detail, but, in this case, there must be some factual allegations in the termination notice that would support a conclusion that the Tribes had been called into disrepute. There is no way, in this case, for the individuals occupying the two tribal offices. General Manager and Human Resources Director, who today are Tuialip tribal members but who tomoiTow may not be Tuialip members, to terminate Appellant based on their unsupported conclusions that Appellant’s minor violations of falling asleep on the job mutated into the major violation for which he was terminated. Furthermore, without disclosure of the bases upon which these officers made their conclusions, Stanhope is unable to rebut them. He is thus denied proper notice of the underlying bases of the violations and an opportunity to be heard in rebuttal to these conclusions. This treatment is unfair and violates the promises made to Appellant in Ordinance 84.
Similarly, the failure to produce evidence that the Tribes were brought into disrepute means that the decision of the Employment Court was not supported by substantial evidence as required by TTO 84, § X.B.12. We therefore reverse the Employment Court on the effectiveness of Stanhope’s termination based on his violation of TTO 84.VI.G.3.f, and TTO 84.-IX.D.2.t.
2. The minor violations.
Stanhope was also terminated for the multiple minor violations listed in the Documented Verbal Warning and in the Dismissal Notice. Once again, he does not dispute that he was found asleep on the job on each of the five times alleged in these notices. The Gaming Agency notes that the Tuialip Tribe does not pay its employees to sleep on the job.
a. TTO 84.IX.D.l.p.: Violation of the Gaming Agency work rules.
The Dismissal Notice includes a violation of TTO 84.IX.D.l,p (violation of employment rules ... of your department), classified as a minor violation, as one of the violations justifying Stanhope’s dismissal. It includes a portion of the Gaming Agency Code of Ethics/Deportment as the section that was violated. The parts included recite the general obligations of a Gaming Agency employee to act in an ethical and morally proper manner, including that an employee ... “will not commit any act, which could adversely affect the Agency.” (sic) This admonition, standing alone, suffers from the same notice and proof difficulties as the major violations. To the extent that the Employment Court may have relied upon violation of this section, we reverse the Employment Court.
b. Notice of Unacceptable Behavior and an Opportunity to Change this Behavior
Ordinance 84 contains tw^o sections dealing with discipline, TTO 84.IX.C and TTO 84.X.A. While these two are in some ways inconsistent, as noted below, each section does require that an employee be given a formal Written Warning prior to dismissal for minor offenses.
*356 TTO 84.IX.C.2 sets out the requirements of a Written Warning. Stanhope received a Documented Verbal Warning under TTO 84.IX.C.1, which is substantively different from a Written Warning.
TTO 84.X.A.3.a.l requires that a Written Warning be given for a first minor offense, if that offense is to be considered in any future discipline. A supervisor could choose a documented verbal warning, instead, but that has no effect on future discipline. TTO 84 X.A.3.a.4. Stan-hope claims that he was never given the notice of a Written Warning under either TTO 84.IX.C.2 or TTO 84.X.A.3.a.l. We agree. While the Gaming Agency is correct that it does not pay its employees for sleeping on duty, neither is it authorized to terminate its employees by short circuiting the notice provisions provided employees by Title 84, upon which the employee is entitled to rely.
c. Progressive Discipline
Our discussion of proper notice does not hold that Title 84 includes a comprehensive system of ‘progressive discipline’ where discipline of an employee must follow, in order, a prescribed ladder of increasingly severe disciplinary measures before terminating an employee. Both the Ordinance provisions and the case law are in conflict, and this case does not squarely present this conflict. We nevertheless highlight the inconsistencies so that the Tulalip Board of Directors might remedy them before this Court is called upon to harmonize them in ways that the Board of Directors might not have intended.
TTO 84.X.A.3.a.l provides that disciplinary actions regarding minor offenses proceed first with a Written Warning issued by the supervisor and include counseling. A Documented Verbal Warning can substitute for the Written Warning if the supervisor believes that such a Documented Verbal Warning would remedy the problem. For the second offense of any type occurring within a year, a Written Warning with concurrence by Human Relations, coupled with a five day suspension, is prescribed by TTO 84.X.A.3.a.2. For the third offense within a year of the first, dismissal is prescribed. TTO 84.X.A.3.a.4 provides that “A documented verbal warning shall not count towards a suspension or dismissal for a second or third offense under this policy.” Curiously, although X.A.3 allows increased penalties where warnings have been given in the previous year, X.A.5 states that warning notices older than six months do not count.
TTO 84.IX.C, Disciplinary Procedures, contains no such ranking as found in TTO 84.X.A.3. It does have two additional options for discipline: Suspension Without Pay, TTO 84.IX.C.3,[2] and a Last Chance Ap-eement, TTO 84.IX.C.4. Also, in lieu of dismissal, the General Manager may demote an employee. TTO 84 IX.E.l. TTO 84 IX.C.5 allows dismissal for multiple minor infractions and does not specifically require prior, less severe disciplinary efforts. But TTO IX.C.2, which requires written warnings for minor offenses, states that three such warnings in a year are cause for dismissal. These sections are hard to harmonize with the explicit order of discipline found in TTO 84.X.A.3.a.
The case law interpreting these provisions is also in conflict. In Tulalip Tribe Maintenance v. McCollum, 6 NICS App. 138 (Tulalip Tribal Ct.App.2004) this Court referenced an earlier unpublished Order that declared that there was no “progres *357 sive discipline” required in TTO 84.[3] However, that Order only considered TTO 84.IX, which is silent regarding the hierarchy of disciplinary actions, and does not mention TTO 84.X, which, as above, contains an arguably “progressive discipline” scheme. McCollum also dealt with major offenses, not minor. To the contrary, Wagner v. Tulalip Housing Authority, 6 NICS App. 75 (Tulalip Tribal Ct.App, 75) declares with equal certainty that TTO 84 contains an explicit “progressive discipline” system which must be followed. 6 NICS App. at 82-3. But Wagner does not discuss TTO 84.IX.[4]

CONCLUSION

The Employment Court is reversed. Although TTO 84.X.B.12 seemingly limits this Court to a reversal for a new trial, our prior decisions have interpreted this provision more expansively. Fryberg v. TTGA, 8 NICS App. 93, 97, n. 7, — Am. Tribal Law -, —— n. 7 (Tulalip Tribal Ct. App.2008), and cases cited therein. In order to deal fairly with the employee, we remand to the Employment Court for entry of an order reinstating Stanhope to his position, together with back pay, benefits and seniority, offset by any income or unemployment or other similar payments he has received since the effective date of termination. Stanhope’s employment file is to be purged of any mention of the termination. If he chooses not to be reinstated, any recommendation or transmission of his employment record shall not mention the termination.

. This violation was incorrectly listed as a minor violation on the Dismissal Notice. The citation to the Code is clear that it is a major violation, and the Parties have treated it as such.

. A suspension without pay may be used for multiple minor, multiple major and minor or one major violation.

. TTO 84 has been amended since 2004, although it appears that the sections referenced in McCollum have not been changed.

. TTO 84 may have been amended between Wagner (2001) and McCollum (2004), but the two sections still are both in the Code.