OPINION
SLEDD, J.:
INTRODUCTION AND ISSUE
This appeal requires the Court to wade again into the opaque waters of the Human Resources Ordinance 84 (“HRO 84”). The issue is the process to discipline absences and tardiness. The ordinance appears to define such absenteeism to be both a minor and major infraction, subject to both the regular disciplinary system and to a special five-step progressive process. When absenteeism leads to dismissal, the Ordinance appears to both authorize and prohibit appeal.
We resolve this confusion differently than did the Employment Court. We conclude that the five step process in the Absenteeism Policy, HRO 84 § VI.E., was the exclusive method for dealing with the Appellant employee’s absences, and that, while suspensions for absenteeism are ap-pealable, dismissals are not. Because the Tribes suspended the employee without following the Absenteeism Policy, we reverse the Employment Court’s decision upholding the suspension. Because dismissals for absenteeism are not appeal-able, we vacate, for want of jurisdiction, that portion of the Employment Court’s decision upholding Appellant’s dismissal. STANDARD OF REVIEW
We review the decision of the Employment Court to determine whether it was arbitrary, capricious, or unsupported by substantial evidence. HRO 84 § X.B.I2. If we find error in the factual findings, we will reverse and remand for a new trial, but if we find only legal error and no factual issues remain, we may vacate the decision of the Employment Court. Tribal Gaming Agency v. Half Moon and Stamp, 7 NICS App. 143, 148 (No. TUL-CV-ET-2006-0046 and 2000-0047) (Tulalip Tribal Ct.App.2006); Tribal Gaming Agency v. Murray, 5 NICS App. 90, 91-92 (No. TUL-EMP-3/98-962) (Tulalip Tribal Ct.App.1998).
FACTS AND PRIOR PROCEEDINGS
On appeal, the parties have disputed the facts. The relevant factual findings of the Employment Court are supported by substantial evidence, however, and are binding on this Court. Those findings and the *409 written record establish the facts set out below. The parties dispute numerous other facts that are not relevant to our decision. We need not resolve those disputes.
Appellant C.S. worked for the Housing Department.[1] On May 12, 2009 the employee signed a tribal form explaining that employees must call into work before being absent or tardy. The form referred to HRO 84 § VI.E and stated that violation would be a minor infraction. On July 7, 2009, the employee received a documented verbal warning for being tardy more than three times in thirty days. The warning cited HRO 84 § VI.E.a, which is captioned “Excessive Absenteeism/Tardiness Policy.” [2] That section provides that:
An employee who is going to be absent must notify the Human Resources Department and the appropriate supervisor or the department head no later than one hour prior to the time the employee’s workday is to begin. Employees who fail to give such notification shall receive unexcused absence for the day and shall be subject to discipline (mi).[3]
The employee’s tardiness also resulted in a referral to the Tribes’ Alternative Resource Management (“ARM”) program.
On September 23, 2009 the Tribes suspended the employee for five days, effective September 28. The suspension notice did not describe or state the date of the offense.[4] Nevertheless, the notice made reasonably clear that the offense was absenteeism. The notice quoted the Absenteeism Policy at HRO 84 § VI.E.a, and also quoted § V1.F.2, which provides that:
Any employee who fails to report to work and does not notify their supervisor or department head and Human Resources of their absence will be considered a no call/no show and will be subject to disciplinary action. The Tribes reserves the right to verify the reason for the employee’s absence (ma).
On October 2, 2009 the Tribes fired the employee for a “no call/no show” that occurred on September 24.[5] The employee appeared at Housing Department offices briefly that day but was ill and left. The parties have disputed when the employee appeared and the circumstances of the employee’s departure.
The employee appealed the suspension to the Employment Court, contending that the Tribes “did not follow the proper steps” and the suspension should have been a warning. The employee separately *410 appealed the dismissal, contending that “I went to work on 9/24/09,” but was sent home sick. The Employment Corn! consolidated the appeals for trial.
The Employment Court resolved factual disputes against the employee. It found that the employee was seeking but had not obtained qualified medical leave on August 25, and that on September 24 the employee had not clocked-in, notified the supervisor and Human Resources, or obtained supervisorial approval to leave after appearing at the office.
At trial, the employee argued that the Tribes must follow the five step progressive disciplinary process in the Absenteeism Policy, and that the Tribes had improperly skipped the first step—a warning notice, and the fourth step—a last chance agreement. The Tribes did not dispute that they had not followed the Absenteeism Policy. They argued that they did not have to follow that Policy, and that the suspension and firing were appropriate because each absence was a major offense under HRO 84 § VI.F.2, for which suspension or firing were permitted under HRO 84 § X.A.S.b.
The Employment Court agreed with the Tribes on the law. It found that the Tribes could choose to follow the Absenteeism Policy, providing five progressive steps of discipline. If they did so, appeal of any dismissal would be foreclosed by HRO 84 X.A.7.d, which states that an employee dismissed “pursuant to attendance policies” cannot appeal.[6] Alternatively, according to the Employment Court, the Tribes could choose to follow the general disciplinary process in HRO 84 § X, but its suspensions and dismissals eould then be appealed under HRO 84 § X.B.4.
The Employment Court found that the Tribes had followed HRO 84 § X regarding both the suspension and dismissal, and denied the employee’s appeals.
The Employee filed a Notice of Appeal to this Court, but did not file proof that the notice had been served on Appellee. We directed appellant to serve the Notice of Appeal and file proof of service, and we set deadlines for filing and service of Appellant’s opening brief. Order Accepting Appeal and Setting Schedule, April 27, 2010.
When we did not receive proof of sendee or the brief by the deadlines, we dismissed. Order Dismissing Appeal, June 10, 2010. Appellant moved for reconsideration. In considering that motion we first addressed whether it had been “filed within ten (10) days of service of the decision or order” as required by TO § 49.4.11.2. We noted that the Tulalip Rules of Civil Procedure provide that “[wjhenever under these rules service of papers other than the complaint and summons is required or permitted, the rules governing the manner of service of such papers in the Superior Court of the State of Washington in and for Snohomish County shall govern.” TO § 49.2.4.1. We applied this rule to the Court’s service of the Order of Dismissal. In Snohomish County and other Superior Courts is that service by mail “shall be deemed complete upon the third day following the day upon which [the papers] are placed in the mail, unless the third day falls on a Saturday, Sunday or legal holiday ...” Civil Rule 5(b)(2)(A). We therefore held that the service of court orders is not complete until the third day after the court places the order in the mail. Applying that standard, we held the motion for reconsideration to be timely. Because Appellant was proceeding pro se and the *411 Motion and sworn statement established that Appellant had substantially complied with the Order Accepting Appeal and Setting Schedule, we granted the Motion for Reconsideration and reinstated the appeal.
Briefs were filed, and oral argument was held on November 5, 2010.
DISCUSSION
A. Suspension
We turn first to the Appellant’s suspension. The dispositive issue is whether the Absenteeism Policy in HRO 84 provided the exclusive disciplinary process for Appellant’s conduct. We hold that it did.
We begin with the language of the Ordinance. The Absenteeism Policy establishes the “responsibility of Supervisors, Managers, and executives to implement the Excessive Absenteeism/Tardiness policy consistently,” and makes failure to do so a major disciplinary offense. § VI.E.l. That language is mandatory and mentions neither exceptions nor alternatives. The Policy cannot be implemented “consistently” if supervisors are free at any time to elect an alternate process under HRO § X. Similarly, each of the five disciplinary steps in the Absenteeism Policy is stated in mandatory, exclusive terms. On the first offense, for example, the employer “must ” remind the employee of the policy; on the second offense, the employee “shall receive a referral to ARMS;” on the third offense “shall receive a five day suspension,” and so on (emphases added). Nothing in the text of the Policy suggests that an alternative disciplinary process applies. No other provision of the Ordinance says anything about the employer’s right to elect which disciplinary process to follow. Nor does the Ordinance provide any means to insure that the employee and the Employment Court know that an election has been made and appeal rights affected. The text of the ordinance thus favors the conclusion that the Absenteeism Policy provides the only relevant disciplinary process here.
This conclusion is reinforced by the rule of statutory construction, by which more specific provisions take precedence over conflicting general provisions. See Tulalip Casino v. Hood, 4 NICS App. 123 (No. TUL-EMP-4/96-493) (Tulalip Tribal Ct. App.1996). The general disciplinary process and the specific Absenteeism Policy in HRO 84 are in conflict regarding the ap-pealability of dismissals and the number of offenses required before dismissal. The conflict cannot be avoided by recognizing a tribal right to elect one procedure or the other, as the Employment Court did. That merely lets the employer, rather than the Courts, resolve the conflict in the Ordinance. Thus the absenteeism disciplinary process in § VI, not the general disciplinary process in § X, was the applicable process for discipline of the employee here. See Tulalip Casino v. Hood, 4 NICS App. at 127 (designation of absence as minor offense, in what is now § VI.E. of HRO 84, controls over designation as major offense in general disciplinary rules of § IX.D).
Finally, we note that, at oral argument before this Court, the employee’s supervisor agreed that the five step process applied here.
The Employment Court was reluctant to require exclusive use of the Absenteeism Policy in the absence of a clear statement from the Legislature. We would also prefer clear legislative statements, but rules of statutory interpretation exist because such clear statements are sometimes lacking. And in this case, we at least have a clear statement from the tribal administration, in its “Call In Procedures” form. That form states that failure to call in will be treated as an unexcused absence and a minor offense under the Absenteeism Poli *412 cy.[7] By telling employees that the Absenteeism Policy will govern, the Tribe has indicated its interpretation of the conflicting Ordinance provisions. As a matter of fairness to employees and deference to tribal agency interpretation of tribal laws, we should respect this interpretation.
It is undisputed that the Tribes suspended the employee without following the five step disciplinary process in the Absenteeism Policy. The suspension was therefore improper. Because there are no relevant factual disputes, we reverse the Employment Court’s decision upholding Appellant’s suspension and remand for entry of an order to provide back pay for the period of the suspension.
B. Dismissal
Regarding the employee’s dismissal, we first face a jurisdictional question. The Employment Court noted that, under HRO 84 § X.A.7.d, an employee “dismissed pursuant to attendance policies” may not appeal. The lower court treated this provision as applicable solely to dismissals processed under § VI.E, and not to dismissals under any other attendance provisions. Thus, even though the Employment Court held that the employee had been dismissed under the procedures of § X, it did not apply the appeals ban of that section to the employee’s appeal. That was a strained reading of the ordinance. It was doubly strained because the appeal ban does not refer explicitly and exclusively to § VI.E or the “Excessive Absenteeism/Tardiness Policy.” It refers to attendance policies, in general and in plural. The most logical interpretation is that the appeal ban applies generally to the attendance provisions in the Ordinance, including the Excessive Absenteeism Policy and the related provisions of § VI.F.[8]
The employee here was dismissed for violation of attendance policies. The dismissal notice cites one such policy—HRO § VI.F—and describes violations on September 23 and 24, 2009. There is no allegation that the attendance charges were a pretext for dismissal on other grounds. We decline to hold that the phrase "pursuant to attendance policies” means “in full compliance with the procedures in the Absenteeism Policy.” Such a holding would require that, in order to determine whether the appeal ban applied, the Employment Court hold a hearing and determine whether the five step disciplinary process in that Policy had been followed. That would be the same inquiry that the Court would hold on the merits under HRO § X.B. 11. Requiring such an inquiry would deprive the appeal ban of any practical effect.
Because the appeal ban of HRO 94 § X.A.7.d applies to absentee related dismissals generally, the employee had no right to appeal dismissal here, and neither the Employment Court nor this Court have jurisdiction to consider the employee’s appeal. That portion of the decision of the Employment Court regarding the dismissal must therefore be reversed and vacated, and the appeal dismissed.
We make four final comments. First, our decision means that a dismissal in violation of the absenteeism disciplinary process will go uncorrected by the courts, *413 while the lesser sanction of suspension can be corrected. As best we can tell from the uncertain language of the Ordinance, however, that was what the Board of Directors intended. If we have misinterpreted the ordinance, the Board can and should correct us.
Second, this case highlights the fact that many provisions of HRO 84 remain confusing and contradictory. There are four paragraphs, for example, that describe the offense of no call/no show or unexcused absence, each in slightly different language. HRO §§ VID. VI.E.a, VI.F.l, and VI.F.2. Two paragraphs, HRO §§ IX.C.6; X.B.4, state that dismissals may be appealed, without any exception and without reference to HRO § X.A.7.d, which states that dismissals pursuant to the absenteeism policy cannot be appealed. This Court has previously noted confusion in the progressive discipline provisions of the ordinance. Stanhope v. Tulalip Gaming Agency, (No. TUL-CV-ET-2009-0039), 8 Am. Tribal Law 352 (Tulalip Tribal Ct. App.2009). The Board of Directors has clarified some provisions. E.g., HRO 84 § IX.C, as amended by Res.2010-173 (“no particular sequence of disciplinary action is required unless specifically stated in this Ordinance”). The Ordinance would benefit from comprehensive clarification.
Third, the parties dispute whether an absence is a major offense, or a minor offense as stated in HRO 84 § VI.E. The Tribes contend that it is major, relying on the parenthetical “(ma)” in the final sentence of HRO 84 § VI.F.2, quoted above. The subject of that sentence, however, is not the employee’s absence, but the Tribes’ right to investigate the reasons for absence, so it is unelear what “(ma)” refers to. We have no need to resolve this dispute. Neither the Absenteeism Policy of HRO 84 § VI.E, which provides the applicable disciplinary process here, nor HRO 84 § XA.7.d which prohibits appeals of dismissals, draw any distinction between minor and major offenses. Consequently, our decision would be the same regardless, and we leave the meaning of the parenthetical “(ma)” for another day.[9]
Fourth, we acknowledge that our jurisdiction was not challenged by either party and that appeals from absenteeism dismissals have previously been heard by this Court. E.g., Tulalip Tribes v. Bill, 8 NICS 51 (No. TUL-CV-ET-2007-0326) (Tulalip Tribal Ct.App.2008); Zackuse v. Educare, 6 NICS App. 17 (No. TUL-EMP-12/98-1201) (Tulalip Tribal CtApp. 2000). Courts have an obligation to insure their own jurisdiction, however, regardless of whether the parties have raised it or the jurisdictional issue has been overlooked in the past. See, e.g., In the Matter of S.T., 8 NICS App. 81, 83 (Squaxin Island Tribal Ct.App.2008); Matilton v. Hoopa Valley Tribe, 7 NICS App. 65, 70 (Hoopa Valley Tribal Ct.App.2005).
CONCLUSION
The Employment Court’s ruling upholding Appellant’s suspension is reversed and the case remanded for an order that the Tribes provide the employee back pay for those five days.
This court and the Employment Court lack jurisdiction over the employee’s dismissal. That portion of the Employment Court decision upholding that dismissal is *414 vacated for want of jurisdiction, and the appeal is dismissed.
The Court Clerk is directed to provide a copy of this Opinion to the Tulalip Human Resources Department and Human Resources shall in the future conduct its review functions described in HRO 84.1X.C consistent with this Opinion.
It is so ordered.

. In accordance with HRO 84, § X.B.I3, as amended by Resolution # 2010-173 (April 30, 2010) this opinion refers to appellant by initials or by the non-identifying terms “appellant” or “employee.”

. Two paragraphs in HRO 84 § VI.E are labeled "a.” The first paragraph “a" is quoted here and in the warning.

. The parenthetical “mi” means a minor infraction; "ma” means a major one. See HRO 84, § IX.D.

. The Employment Court found that the absence occurred on August 25, 2009 and suspension occurred on September 23. The unexplained delay of more than twenty-five days before the suspension was imposed could violate HRO 84 § X.A.8. See Renecker v. Tulalip Casino, 5 NICS App. 1, 3-4, — Am. Tribal Law -, 1997 WL 34706752 (No. TUL-EMP-11/96-667) (Tulalip Tribal Ct.App. 1997) (under former HRO 84 § XA8, discipline taken more than twenty days after the offense was invalid). Because the Employment Court made no finding regarding the reasons for this delay, and because we find the suspension invalid on other grounds, we express no opinion on the timing of the suspension.

.The Employment Court referred to the second no show as occurring on September 28, but the dismissal notice refers to an absence on September 24. September 28 was the date the suspension was to have taken effect.

. The Employment Court also noted the repeal, in 2005, of former § VI.E.2, which had provided that "Employees disciplined under this [Absenteeism] policy may appeal."

. The form also refers to HRO 84 § IX.D.l.p, but that is a substantive provision stating that violation of any employment rule is a minor offense. It does not address the disciplinary process.

. We have no occasion to decide whether HRO § IX.D.2.d, separately defining the major offense of job abandonment based on two consecutive days' absence, is an “attendance policy” such that a dismissal based on its violation could not be appealed.

. Previous decisions of this Court have addressed whether absence was a major or minor violation, but they dealt with earlier versions of HRO 84 and are not helpful here. See Bill, supra, 8 NICS App. 51 (absence more than two hours is major under former § IX.D.2.d); Hood, supra, 4 NICS App. 123 (absence is minor).